***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employment relationship existed between Plaintiff and Defendant. *Page 2 
3 Defendant is the carrier on the risk.
4. Plaintiff's average weekly wage is $647.98, and the compensation rate is $432.00.
5. Plaintiff sustained a compensable injury to his shoulder on or about October 11, 2007.
6. The parties stipulated into evidence as Stipulated Exhibit 1, an Index of Exhibits, including medical reports and Industrial Commission Forms.
7. The Parties took the depositions of Drs. Daniel Oberer, Glenn Perry, and John Welshofer.
 *********** ISSUE
1. Whether Plaintiff suffered a compensable injury to his neck on October 11, 2007 at the same time that he suffered an admittedly compensable injury to his shoulder.
 ***********
Based on the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Holmes, Plaintiff was fifty-five years old. Plaintiff holds an associate degree and a bachelor of arts degree.
2. At the time of the hearing before Deputy Commissioner Holmes, Plaintiff had worked for Defendant for just short of five years as a driver's license examiner.
3. Plaintiff was working at Defendant's Gastonia Driver's License Office on October 11, 2007 when he leaned back in his chair and the chair rolled into a depression in the floor which caused it to tip backwards. Plaintiff reached out with his right arm and grabbed a *Page 3 
desk to prevent him from falling backwards. Upon grabbing the desk, Plaintiff experienced pain in his shoulder and abdomen.
4. On October 15, 2007, Plaintiff treated for his shoulder injury with Dr. Timothy Sloand who had performed an AC joint resection on Plaintiff's right shoulder approximately eight months prior to Plaintiff's October 11, 2007 injury. On December 27, 2007, Dr. Sloand administered a cortisone injection and instructed Plaintiff to follow up with him as needed. When Plaintiff continued to experience pain he was seen by Dr. Eric Johnson, who worked in the same practice as Dr. Sloand, on May 22, 2008.
5. Subsequent to his treatment of Plaintiff, Dr. Sloand's medical license was revoked due to alcohol abuse, and Dr. Sloand ceased practicing medicine.
6. Following his injury, Plaintiff was also seen by Dr. Mark Moskowitz for a possible hernia related to the accident.
7. When Plaintiff continued to experience shoulder and neck pain following his treatment with Drs. Sloand, he was seen by Dr. Shawnya Gore, his family physician, on February 1, 2008. At that time, Plaintiff complained that he sometimes experienced neck pain which extended into his shoulder, and that he sometimes experienced shoulder pain alone. Dr. Gore ordered an MRI of Plaintiff's neck which was performed on February 15, 2008. Based on the results of the MRI, Dr. Gore diagnosed disc herniation with significant central canal and foraminal stenosis at C5-C6 and C6-C7.
8. On June 9, 2008, Plaintiff was seen by orthopedic surgeon Dr. Glenn B. Perry for his shoulder pain. Dr. Perry thought Plaintiff had a work related injury and indicated that he wasn't "completely sure that it wasn't coming from his neck." While Dr. Perry reviewed Plaintiff's February 15, 2008 MRI findings, he did so for the purpose ensuring that the etiology *Page 4 
of Plaintiff's shoulder pain was not coming from his cervical spine and mimicking shoulder symptoms. Dr. Perry indicated that he was not really treating Plaintiff's cervical spine as that was not his area of specialty. Dr. Perry recommended a course of physical therapy for Plaintiff and saw Plaintiff again on July 23, 2008, at which time he referred Plaintiff for a consult to have his neck evaluated. When asked whether cervical problems and shoulder problems can be related in terms of symptoms, Dr. Perry opined, "they can be. Both can give you shoulder pain and pain that can radiate down into the arm." Dr. Perry went on to state, "sometimes, actually, clinically, it's difficult to discern, so sometimes we'll have to get the diagnostic studies of both."
9. On September 3, 2008, Plaintiff was seen by Dr. John Welshofer of Carolina Neurosurgery, who conducted a complete examination of Plaintiff, took Plaintiff's history, and reviewed Plaintiff's radiological studies. Dr. Welshofer indicated in his records that Plaintiff injured his neck at the time of the accident. Dr. Welshofer diagnosed Plaintiff with cervical spine stenosis, cervical disc protrusion, and cervical radiculopathy and referred Plaintiff to Dr. Oberer for surgery. Like Dr. Perry, Dr. Welshofer also indicated that it was sometimes difficult to differentiate neck pain from shoulder pain. Dr. Welshofer opined that it was more likely than not that Plaintiff's cervical problems were related to his accident at work.
10. On September 19, 2008, Plaintiff was seen by Dr. Oberer who examined Plaintiff for his complaint of neck pain. Dr. Oberer's notes indicate that Plaintiff was injured on the job and that, following the injury, Plaintiff experienced right sided neck pain with pain extending down the right shoulder and into the right arm. Dr. Oberer diagnosed cervical spondylosis, cervical stenosis, cervical degenerative disc disease with disc herniations, and cervical radiculopathy. Dr. Oberer recommended a two level anterior cervical discectomy and fusion at C5-6 and C6-7 which was performed on October 14, 2008. *Page 5 
11. Following the surgery, Plaintiff reported that his arm pain was essentially gone and that his right hand weakness was improving, but that he was still experiencing neck pain. In early May 2009, Plaintiff contacted Dr. Oberer's office regarding a one-month history of increased neck pain and left greater than right arm weakness. A new cervical MRI was performed in May 2009 which showed new disc herniation. Dr. Oberer recommended surgery for the new disc herniation at C4-5, which was performed on May 21, 2009. Dr. Oberer opined that the incident at work more likely than not exacerbated an existing condition to the point that it caused unbearable symptoms for Plaintiff.
12. Both Dr. Welshofer and Dr. Oberer stated that fusing one or more levels of the neck can put increased stress on non-fused levels above or below the fusion. When asked for his opinion as to whether the surgery he performed on Plaintiff on May 21, 2009 was the result of the kind of increased stress that can result from a fusion, Dr. Oberer first responded," I believe it is possible," and then elaborated by stating, "and likely."
13. Dr. Oberer took Plaintiff out of work on the date of his first surgery, at which time he indicated that Plaintiff should not return to work as doing so would put strain on the neck and could exacerbate his condition. Dr. Oberer had not release Plaintiff to return to work as of the time of his deposition on June 25, 2009.
14. Drs. Welshofer and Oberer are the only physicians who specifically evaluated and addressed Plaintiff's neck condition. While Dr. Perry reviewed an MRI which included images of Plaintiff's neck, he indicated that he was concentrating on Plaintiff's shoulder in doing so, and further stated that he was not really treating Plaintiff's cervical spine as it was not really his area of specialty. In light of the foregoing, the undersigned assign greater weight to the testimony of Drs. Welshofer and Oberer regarding any causal connection between Plaintiff's October 11, 2007 *Page 6 
work related accident and his neck condition and resulting surgeries.
15. Based on the greater weight of the competent evidence of record, the Full Commission finds that Plaintiff sustained an injury to his neck as the result of the October 11, 2007 accident at work which arose out of and in the course of his employment.
16. The Full Commission also finds, based on the greater weight of the competent evidence of record, that the aforementioned injury to Plaintiff's neck necessitated the first surgery performed by Dr. Oberer on September 19, 2008, and that the second surgery performed by Dr. Oberer on May 21, 2009 was necessitated by the stress exerted on the disc located above the site of the first surgery, and is therefore a compensable part of the work related injury by accident of October 11, 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his neck as a result of an accident arising out of an in the course of his employment with Defendant which occurred on October 11, 2007. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff is entitled temporary disability and permanent disability as may be determined, however, Plaintiff cannot draw temporary total disability for the neck injury until he is released for work for his shoulder injury. N.C. Gen. Stat. §§ 97-29; 97-30.
3. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the neck surgeries performed by Dr. Oberer on *Page 7 
September 19, 2008 and May 21, 2009. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, Defendant shall pay such temporary total disability compensation to Plaintiff at the rate of $432.00 per week from October 2008 until April 2009, when Defendant reinstated temporary total disability benefits following Plaintiff's March 2009 shoulder surgery, and beginning at the time the Plaintiff is released for work for his shoulder injury.
2. Defendant shall pay such permanent disability as may be shown for his neck injury when Plaintiff reaches Maximum Medical Improvement and is released from care by his treating physician.
3. Defendant shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's compensable neck injury as may be reasonably required to effect a cure, provide relief, or lessen the period of disability, including the neck surgeries performed by Dr. Oberer on September 19, 2008 and May 21, 2009.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel.
5. The Defendants shall pay the costs.
This the 31st day of March, 2010.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER